# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 4:22CR3077 |
| Plaintiff, | **DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE** |
| v. | |
| **NEIL SURESH CHANDRAN and BRYAN LEE,** | |
| Defendant. | |

## Introduction

Defendant Neil Suresh Chandran has been indicted for multiple counts of wire fraud and money laundering. He allegedly committed the offenses with at least 3 other individuals, including co-defendant Bryan Lee and unindicted co-conspirators Michael Glaspie and "Individual 1" in the Superseding Indictment. The operation allegedly lasted approximately 4 years.

According to the Superseding Indictment, Chandran owned a group of companies that operated under the banner of "ViRSE." He was a resident of Las Vegas, Nevada, and operated his companies out of Las Vegas. Co-defendant Bryan Lee, also of Las Vegas, was the signatory on bank accounts and sole director and officer of one of the "ViRSE" companies, ViMarket.

The government alleges that Chandran, Lee, Glaspie, and Individual 1 marketed investment opportunities in ViRSE companies with the false promise of extremely high returns. The men purportedly enriched themselves from those

1

investments while concealing from investors the true status of the investments and how they were being used. The government alleges that Chandran, Lee, Glaspie, and Individual 1 had cause to believe all along that the promised returns would never be realized.

Individual 1 was once a Nebraska resident, and a handful of the wire communications alleged to be part of the scheme were sent to his email and bank accounts in Nebraska before eventually being routed to the bank accounts for ViRSE.  Individual 1 no longer lives in Nebraska, however, and none of the other parties, investors, witnesses, or events have any connection to the state.  The companies and assets allegedly involved in the scheme are incorporated in Nevada and several people expected to testify reside there as well.

Federal Rule of Criminal Procedure 21(b) allows a court to transfer a proceeding to another district "for the convenience of the parties, any victim and witnesses, and in the interests of justice."  Under this provision, Chandran moves for a transfer of venue to the District of Nevada.

## Principles of Venue

Article III, Section 2 of the United States Constitution provides that "[t]he trial of all Crimes… shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2. In the case of a federal crime that may have occurred in many states, a trial is proper in any venue where "any part" of the crime occurred. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (1999). As a result, the Venue Clause permits a defendant charged with conspiracy to be tried in

"any State in which any co-conspirator took any overt act in furtherance of the endeavor." *Smith v. United States*, 143 S. Ct. 1594, 1603 (2023).

Under these principles, venue is arguably appropriate in Nebraska because of transactions that passed through Individual 1 's Nebraska bank accounts. But Nebraska is far from the only possible location for trying this case. Federal Rule of Criminal Procedure 21(b) provides that a district court "may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). Because the District of Nevada is a far more convenient venue to the parties and likely witnesses in this case, and because a transfer there would serve the interests of justice, this court should transfer this case to the District of Nevada.

Mr. Chandran has requested an evidentiary hearing on this motion. Accompanying the motion and this Brief are the Affidavits of David R. Stickman and Tawnya Root which provide factual support for the statements made herein.

## Argument

The decision whether to grant a Rule 21(b) motion rests with the sound discretion of the district court. *United States v. Phillips*, 433 F.2d 1364, 1368 (8th Cir. 1970). A number of factors that bear on its decision including:

(1) the location of the defendant;

(2) the location of possible witnesses;

(3) the location of events likely to be in issue;

3

(4)     the location of documents and records likely to be involved;

(5)     disruption of defendant's business unless the case is transferred;

(6)     expense to the parties;

(7)     the location of counsel;

(8)     relative accessibility of place of trial;

(9)     docket condition of each district or division involved; and

(10)    any other special elements which might affect the transfer.

*Pratt v. Minnesota Min. & Mfg. Co.,* 376 U.S. 240, 244 (1964); *see also United States v. McGregor,* 503 F.2d 1167, 1170 (8th Cir. 1974); *United States v. Robinson,* 2018 WL 3201802 at *4 (D. Neb. June 29, 2018).

Most of these considerations weigh in favor of transfer, and those that do not are neutral factors, at best. On balance, the case's connection to Nebraska is too slight and the burdens of trying it in Nebraska are too high to justify venue in this district. In the interest of justice, a transfer to the District of Nevada is appropriate.

### 1.      The location of the defendant

Location of the defendant is one factor that courts consider in determining whether to grant a motion to transfer.  Although a defendant has no right to a trial in his home district, "the convenience of the defendant[ ] to be tried in the district where they live and work" may tip the balance in favor of a new venue. *United States v. McManus,* 535 F.2d 460, 463 (8th Cir. 1976). Chandran's home is in Nevada, which makes Nevada a convenient option for trial.  There he would be able

4

to access the business records and other evidence he needs to build his defense. Lee is also a Nevada resident. He is on pretrial release under the supervision of U.S. Probation and Pretrial Services in the District of Nevada.

Admittedly, Chandran is not in Nevada at the moment, as he is being detained in Nebraska pending trial. But the District of Nevada has pretrial detention facilities, as well. The government will incur the cost of detention wherever Chandran is housed, so a transfer of custody does not increase the burden on the government. At best, the defendant's residence is a neutral factor in the transfer equation.

### 2. The location of possible witnesses

Location of witnesses is "one of the more significant factors" in the decision to transfer venue under Rule 21(b). *United States v. Daewoo Indus. Co., Ltd.*, 591 F. Supp.157, 160 (D. Or. 1984). The witnesses in this case will likely include Individual 1 and Glaspie, law enforcement officers, accountants and officers involved in Chandran's companies, and investors in the allegedly fraudulent scheme. The defendants may also call character witnesses. None of these potential witnesses live in Nebraska.

The lead investigator in this case was FBI Special Agent Jeremy Desor. In various search warrant applications in this case, Desor represents that he is assigned to the FBI's Washington Field Office. He works out of Manassas, Virginia. Special Agent Desor has previously worked in Chicago and San Francisco but has

no ties to Nebraska. He can just as easily fly to Nevada rather than to Nebraska to testify in this case.

Individual 1 and Glaspie also live outside of Nebraska. Although Individual 1 previously resided in Lincoln, he moved to Nevada before the Indictment in this case was filed. Glaspie has never lived in Nebraska. He currently resides in Florida.

The "Chandran's companies"[1] are all LLCs registered in either Delaware or Nevada. The testimony of the officers and employees of these companies will be needed to establish the defense for Chandran and Lee. For the most part, these officers and employees reside in Nevada or on the west coast. Potential witnesses in this category include:

- Owen Cran of Los Angeles, California, who was Chandran's Accountant.

- Cecily Lough of Kihei, Hawaii, who consulted with Chandran on how to market his ViRSE app

- Guy Robert of Los Angeles, a project manager who worked on developing Chandran's app

- Tracy Hutson of Los Angeles, who produced videos to show to potential customers at conferences

---

[1] The phrase "Chandran's companies" is used here as the government has so characterized several companies listed in the Superseding Indictment. These companies are stated in the Superseding Indictment to be FreeVi Lab; Studio Vi, Inc.; ViDelivery, Inc. ViMarket, Inc. and Skalex USA Inc. See paragraph 1 of the Superseding Indictment Docket 75.

- Anthony Turner of Las Vegas, who was in charge of online security for ViRSE products

- Raj Ponniah an of Los Angeles who was an employee of one of the "Chandran companies"

- Andrea Galeano of Los Angeles was an employee of one of the "Chandran companies"

- Musarrat Bajwa of Las Vegas was a stakeholder of the "Chandran companies"

- David Ross of Miami, Florida who was a salesman of a supplier of products to the "Chandran companies"

- Laurent Velasquez of Las Vegas who was an employee of one of the "Chandran companies"

To prepare for trial in this case, defense counsel and their investigators will need to interview these witnesses and any others who could provide relevant information about Chandran and Lee's business endeavors. If the case remains in Nebraska, the government will be required to pay for flights and lodging for the members of the Federal Public Defender's Office to conduct these interviews.

Various distributors worked with Chandran's companies to provide products to investors. Some of these distributors are operating in Asia while others are doing business in Nevada. If officers or employees of these distributors were called to testify, Nevada would be a much more convenient venue for the trial.

The government has supplied defense counsel with FBI 302 documents which summarize statements obtained from various witnesses. Due to the Protective Order entered in this case, these individuals will not be named here. None of the witnesses interviewed by the FBI appear to be from Nebraska.[2]

The investors who could be called as witnesses in this case come from all over the world. However, none of the investors reside in Nebraska.[3] And because of the size of the airports and availability of international flights, it will be easier for these witnesses to travel to Las Vegas than Lincoln, Nebraska.

Character witnesses are the last category of witnesses who may testify on behalf of Chandran or Lee. The people who would fall into this category are primarily located in Las Vegas. It would be a significant inconvenience to ask these witnesses to fly to Nebraska, but a short trip for them to testify in Nevada.

3. **The location of events likely to be in issue**

The third factor in the transfer analysis involves where the operative events occurred. "Where 'it seems clear that the great majority of the events and transactions" that will be at issue at trial concern the defendant's business transactions and creation of financial reports that occurred in another jurisdiction, transfer is appropriate.'" *United States v. Ferguson*, 432 F.Supp.2d 559, 565 (E.D. Va. 2006) (quoting *United States v. Clark*, 360 F. Supp. 936, 943 (S.D.N.Y. 1973)) That is the case here.

---

[2] It is not clear whether any FBI 302 exists regarding any interviews with bank employees located in Nebraska.
[3] Defense counsel has reviewed a heavily redacted victim impact statement which might indicate one person sent a total of $408 to Michael Glaspie or a person working with Glaspie. It appears that person was at least in Nebraska in April, 2022.

The government describes the events that led to the Indictment as follows: "Chandran made or caused [Glaspie] and Individual 1 to solicit funds from investors for the Chandran companies based on the materially false and misleading promise and representation that their investments would soon yield extremely high returns…." (Allegation 9(a), p. 3) To carry out the scheme, the group used various forms of mail and wire communications.

According to the Superseding Indictment, Individual 1 sent two checks in the mail from the District of Nebraska to Las Vegas for the purpose of advancing the fraud. (Superseding Indictment, Docket # 75, Counts 2 & 3) Chandran allegedly emailed, called, or transferred money to the District of Nebraska on three occasions. (Superseding Indictment, Docket #75, Counts 4-6) These are the only activities related to the alleged scheme that took place in Nebraska.

The fact that some communications passed through Nebraska, however, does not mean that Nebraska is the venue in which this case should proceed. The outcome in this case will not turn on these communications. It will turn on 1) the specific representations made to investors; 2) financial transactions that followed those representations; 3) communications between Chandran and those who were allegedly part of the scheme; 4) the efforts that Chandran and others made to advance his business and provide a return to investors; and 5) how the money intended for ViRSE was spent. Some of the proof of those representations is in digital form, which can easily be transferred to either Nevada or Nebraska. *See*

9

*Robinson*, 2018 WL 3201802 at *4. But other "events" can only be established through witnesses who do not reside in Nebraska.

Other events in dispute in this case involve: 1) the distribution of electric vehicles, cell phones, and other property to investors as a return on their investment; and 2) the alleged purchase of condominiums and other real estate with investor money. The cell phones and vehicles are being stored in Las Vegas, and the real estate holdings are similarly in Las Vegas and California. The "location of events" therefore favor transfer.

**4.    The location of documents and records likely to be involved**

A trial of this case will likely begin with an explanation to the jury of how Chandran's companies were set up, how they interacted, and what business they were doing. Because most of "Chandran's companies" are LLC's incorporated in Nevada, the documents related to those companies are also in Nevada. This point weighs in favor of a transfer to Nevada.

The trial of this case will also require the government to produce communications between Chandran, his associates, and investors. In "this age of electronic document transmissions," this factor has little effect on venue. *In re Apple, Inc.*, 602 F.3d 909, 914 (8th Cir. 2010). Such documents can be "digitalized and easily transported" to any venue. *Robinson*, 2018 WL 3201802 at 4.

To the extent that foundation needs to be established for the original documents, having the trial in Nebraska does little to facilitate that process. Very few of the documents in this case originated in Nebraska, and very few were

received by people in Nebraska. The bulk of the documents would need to be authenticated by residents of other states, including Nevada. This factor supports a transfer of jurisdiction.

### 5. Disruption of defendant's business unless the case is transferred

Disruption to the parties' business or livelihood can be considered in determining whether to transfer a case. This factor has a neutral effect in Chandran's case. As noted above, Chandran is in pretrial detention. Moreover, his business assets have been seized by the government. Chandran's business has already been irreparably disrupted. This factor should have no impact on the question of venue.

### 6. Expense to the parties

Because none of the witnesses in this case are in Nebraska, a trial of this case in Nebraska would be very expensive to the government. Any witnesses that the government or the defendant subpoenas for trial are entitled to the payment of travel expenses. Fed.R.Crim.P. 17(b). The government will be responsible for providing them airfare and overnight accommodations. The GSA rate for a hotel in Lincoln is $98 per night. https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-results/?fiscal_year=2023&state=NE&perdiemSearchVO_city=Lincoln&action=perdiems_report&zip=&op=Find+Rates&form_build_id=form-jc0ELSF1mPWZiF-KK6ZU8rbUQwpsAIizny3YcaaB57k&form_id=perdiem_form.

If, on the other hand, the trial is moved to Las Vegas, many of the witnesses can drive their own vehicles to the federal courthouse and return to their own homes overnight. These savings quickly offset the difference in GSA Lodging rates, which place Las Vegas as $22 higher than Lincoln per night. A trial in Nevada would be the least expensive way to resolve this case.

### 7. The location of counsel

The location of each party's attorney also factors into the question of venue. In most Nebraska criminal cases, the government's attorneys reside and work in Nebraska, giving the government an argument that the trial should be held there. In this case, however, lawyers from the Department of Justice in Washington, D.C. are prosecuting the case. None of them reside in the District of Nebraska or in the District of Nevada, so the burden to the government will be the same regardless of the court in which this case proceeds.

The same cannot be said for Chandran and his attorney. Admittedly, Chandran's counsel lives in Nebraska, which would make a Nebraska trial convenient. But defense counsel would face significant inconvenience during the lead-up to trial. Because the events that occurred and the witnesses who can testify about them are primarily in Nevada, case investigation and witness interviews will inevitably require out-of-state travel. Travel by Chandran's counsel is paid by the federal government, which in turn burdens the taxpayer.

These expenses could be avoided if the court would assign a venue convenient to *both* trial preparation and the trial itself. The District of Nevada is that venue.

The Federal Public Defender's Office in Las Vegas, Nevada has agreed to take on Chandran's case if it is transferred, and it can prepare and try the case with far less government-funded travel.

Further, Bryan Lee's attorney, Josh Tomsheck, practices in Las Vegas. Mr. Tomsheck has indicated to Chandran's counsel that he will join in this motion to transfer.

### 8. Relative accessibility of the place of trial

Nevada is a far more accessible site for a trial than Lincoln, Nebraska. Many witnesses already call Nevada home, so they have the option to travel to the courthouse by air or car. Other witnesses will have far more choice and flexibility in their travel arrangements if this case is transferred. Seventy-two airlines serve Harry Reid International,[4] while only twenty-four serve Eppley Airfield in Omaha and four operate in Lincoln.[5] https://www.ifly.com/airports/lincoln-airport/airlines-served.

As mentioned above, some of the likely witnesses in this case will be investors in Chandran's business who reside in foreign countries. https://lasvegasairportguide.com/statistics/. Harry Reid International Airport has flights to eleven different countries each day. https://lasvegasairportguide.com/statistics/#google_vignette. There are no international flights into or out of the Lincoln or Omaha airports. Overall, Nevada is the more accessible option for trial.

---

[4] https://lasvegasairportguide.com/statistics/#google_vignette
[5] https://www.omaha-airport.com/eppley-airfield-airlines

## 9. Docket condition of each district or division involved

The docket conditions of Nevada and Nebraska suggest that the case will be resolved more quickly in Nevada than in Nebraska. Judges in each district carry remarkably similar case loads, with judges in Nevada handling 457 cases and those in Nebraska handling 460. There is a significant disparity, however, in the number of federal criminal cases that the judges carry. https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/03/31-1. Nevada judges have 42 criminal cases at any one time, while Nebraska judges are juggling 167 federal criminal cases. *Id*. Moreover, Nevada is operating with its full complement of judges, while the District of Nebraska is one short with no nominations in sight. *Id*.

Chandran's case has been designated a complex case, so it is not subject to some of the deadlines that are in place for ordinary criminal cases. Nonetheless, the district courts in Nevada are not facing the same challenges that Nebraska courts are facing while waiting for a judge to fill a judicial vacancy. To expedite the administration of justice, the case should be transferred to Nevada.

## 10. Special elements which might affect the transfer

The factors relevant to transfer under Rule 21(b) include any "special elements" which might impact the court's decision. One special factor is the complexity of this case. As the Court has been advised, the discovery in this case includes over 500 gigabytes of material. With video, cell phone and computer files, the size of the discovery exceeds a terabyte of material. The dollar amount of loss is

alleged to be 45 million dollars. The Las Vegas office of the Federal Public Defender for the District of Nevada has handled cases of this magnitude and has staff experienced in reviewing and preparing such cases for trial. While the Federal Public Defender's Office in Nebraska can adequately defend Mr. Chandran, a transfer would be a more efficient use of government resources. The cumulative weight of the factors already discussed heavily support transfer.

## Conclusion

Of the various factors that a court should consider in determining whether to transfer a case to another venue, most weigh in favor of transferring Chandran's prosecution. This case has virtually no connection to the District of Nebraska and trying it here will require significant resources that are better spent elsewhere. Chandran respectfully requests that the court grant his Motion to Transfer his case to the District of Nevada.

NEIL SURESH CHANDRAN, Defendant,

By:   s/ David R. Stickman
**DAVID R. STICKMAN**
**Federal Public Defender**
222 South 15th Street, Suite 300N
Omaha, NE 68102
(402) 221-7896
fax: (402) 221-7884
e-mail: david_stickman@fd.org