IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiffs,

vs.

NEIL SURESH CHANDRAN, and
BRYAN LEE,

Defendants.

**4:22CR3077**

**MEMORANDUM AND ORDER**

Defendants have filed motions to transfer this criminal case to the United States District Court for the District of Nevada. (Filing Nos. 99 and 103). Defendants argue the District of Nebraska has virtually no connection to the facts of this case, most of the witnesses, records, victims, and relevant and material events occurred in Las Vegas, Nevada or locations other than Nebraska, and therefore the United States District Court for "the District of Nevada is a more suitable district for the convenience of the parties, victims and witnesses and is in the interests of justice." (Filing No. 99). The government opposes transfer. (Filing Nos. 102 and 105). For the reasons discussed below, Defendants' motions will be denied.

THE CHARGES

The indictment against Defendant Chandran was filed over a year ago, on June 14, 2022. The indictment alleges Chandran violated federal law by engaging in money laundering and using interstate wire and mail communications to obtain monetary investments by fraud, which he then misappropriated to either launch other business ventures or to personally benefit himself and others. Specifically, Chandran, with the assistance of others,

1

allegedly falsely claimed that wealthy buyers intended to purchase Chandran's companies. The indictment alleges Chandran falsely claimed his companies were sufficiently funded, any investments prior to the sale would be used merely to cover operating expenses until the companies were sold, and once the wealthy buyers purchased the Chandran companies, those who had invested would reap extremely high returns on their investments.

As a result of this scheme, Chandran and his associates allegedly obtained more than $45 million from more than 10,000 investors. (Filing No. 1, at CM/ECF p. 4, ¶ 8(f)), with the investment funds routed through banks located in Nebraska. (Filing No. 1, at CM/ECF p. 5-6, ¶¶ 10, 12). As a result of Chandran's alleged illegal conduct, the government seeks forfeiture of real estate and personal property in Nevada and southern California. (Filing No. 1, at CM/ECF pp. 9-10, 17, Forfeiture ¶ 2 (cc-hh), Money Laundering ¶ 2 (b-c)). A resident of Lincoln, Nebraska allegedly participated in the scheme by fraudulently raising funds and serving as a conduit for transferring funds fraudulently collected by a Florida resident to Chandran and his companies. (Filing No. 1, at CM/ECF p. 2, ¶3).

A superseding indictment was filed on May 16, 2023. (Filing No. 75). This indictment identified the Florida resident as Michael Glaspie. On February 23, 2023, Glaspie pleaded guilty in the Nebraska federal court to charges arising from his participation in Chandran's scheme to fraudulently collect investor funds. See U.S. v. Glaspie, 4:23CR3010-JMG-CRZ.

The superseding indictment added Bryan Lee, a Nevada resident, as a named defendant, alleging Lee and Chandran engaged in money laundering, and they conspired to commit the mail and wire fraud alleged in the initial

2

indictment. The superseding indictment alleges that to facilitate Defendants' scheme:

- funds were mailed from Nebraska to Nevada, (Filing No. 75, at CM/ECF p. 7, ¶ 18);

- Chandran's contact in Nebraska (Individual 1) received an email from Chandran which fraudulently espoused the high-returns for those investing in Chandran's companies, Individual 1 and Chandran participated in a conference call with investors and potential investors, and Individual 1 received a wire transfer of funds into his Nebraska bank account, (Filing No. 75, at CM/ECF p. 8-9, ¶ 23);  and

- funds were electronically transferred to title companies in Las Vegas, Nevada, and a cashier's check was drawn from a Nebraska bank and sent to an escrow company in Los Angelos, California. (Filing No. 75, at CM/ECF p. 9-10, ¶ 25).

The superseding indictment seeks forfeiture of the same assets described in the initial indictment, plus an additional Nevada property. (Filing No. 75, at CM/ECF p. 21, Money Laundering ¶ 2 (c)).

## ANALYSIS

"[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237. Venue is determined from the nature of the crime alleged and the location of the act or acts supporting the essential conduct

elements of the crime. United States v. Anderson, 328 U.S. 699, 703 (1946). See also, United States v. Mink, 9 F.4th 590 (8th Cir. 2021), reh'g denied (Sept. 29, 2021), cert. denied, 142 S. Ct. 1166 (February 22, 2022). In a conspiracy case, venue is proper in any jurisdiction in which an overt act in furtherance of the conspiracy was committed by any of the conspirators. United States v. Cordova, 157 F.3d 587, 597 (8th Cir. 1998). Mail fraud actions may be brought in the district where a letter was mailed or where it was delivered. United States v. McGregor, 503 F.2d 1167, 1170 (8th Cir. 1974).

Based solely on the allegations within the indictment and superseding indictment, venue is proper in Florida, Nebraska, Nevada, and California.

Chandran and Lee move to transfer this case to Nevada pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure. Rule 21(b) states:

> Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice.

Fed. R. Crim. P. 21(b). The government's choice of forum is ordinarily respected. But that presumption can be overcome if the litigation would be more convenient in the district where the defendants, their counsel, and most of the witnesses live and work. States v. McManus, 535 F.2d 460, 463 (8th Cir. 1976).

The following factors are considered when deciding whether transfer is warranted under Rule 21(b):

(1) location of the defendant;

(2) location of possible witnesses;

(3) location of events likely to be in issue;

(4) location of documents and records likely to be involved;

(5) disruption of the defendant's business if the case is not transferred;

(6) expense to the parties;

(7) location of counsel;

(8) relative accessibility of place of trial;

(9) docket condition of each district or division involved; and

(10) any other special elements which might affect the transfer.

Platt v. Minnesota Min. & Mfg. Co., 376 U.S. 240, 243-44 (1964). No one of these factors is dispositive. Instead, the court must consider the totality of the facts, determine which factors are of greatest importance, and balance the parties' respective interests in their requested forums. United States v. Valenciano, No. CR06-4082MWB, 2006 WL 4046179, at *4 (N.D. Iowa Dec. 27, 2006) (citing United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2d Cir. 1990)).

### 1. Location of the defendants

Chandran and Lee are both citizens of Nevada. Chandran is currently detained in Nebraska, but he presumably could be detained in a Nevada jail; Lee is on release and living in Nevada.

### 2. Location of the possible witnesses

Defendants argue that none of the witnesses interviewed by the FBI appear to be from Nebraska, and most of the witnesses reside in Las Vegas, Nevada or outside the District of Nebraska, including:

5

- The government's lead investigator, FBI Special Agent Jeremy Desor, from Virginia;
- Individual 1, who lived in Nebraska at the time of the charged conduct, but now lives in Nevada;
- Glaspie, who lives in Florida;
- A salesman for the Chandran investments from Miami, Florida;
- Accountants and officers for Chandran and his companies, including:
  - an accountant, a marketing consultant, a project manager, and a video production employee, all of whom are from Los Angelos, California,
  - a consultant for Chandran from Hawaii,
  - an online security manager and a stakeholder of the Chandran companies, both of whom are from Nevada,
  - distributors for the Chandran companies operating out of Nevada and Asia, and
  - several other officers and employees of the Chandran companies who reside in Nevada and on the west coast;
- Law enforcement officers;
- Investors in the allegedly fraudulent scheme; and
- Character witnesses for the defendants who live in Nevada and Southern California.

The government argues that the unlawful investment scheme allegedly spear-headed by Defendants was a national fraud scheme that victimized more than 10,000 investors hailing from nearly every state in the United States, and several other countries, any of whom may be called as witnesses. It argues that as part of its investigation, the government spoke to victims (or their family) living in Texas, California, Colorado, Illinois, New York, New Jersey, and Colombia,

6

and that other potential witnesses for both the government and Chandran live in Hawaii, Georgia, and Canada.

### 3.  Location of events likely to be in issue

Defendants argue that very few of the events at issue occurred in Nebraska, claiming any contacts with Nebraska were limited to a handful of wire communications sent to email and bank accounts in Nebraska; two checks mailed from Nebraska to Las Vegas for the purpose of advancing the fraud; and three occasions when Chandran allegedly emailed, called, or transferred money to Nebraska. Defendants claim that the distribution of electric vehicles, cell phones, and other property to investors as a return on their investment, and the alleged purchase of condominiums and other real estate with investor money, all occurred in Las Vegas and California, with the cell phones and vehicles now stored in Las Vegas.

In contrast, the indictment states that Defendants' alleged fraudulent transactions passed through Individual 1, then a Nebraska resident, and Individual 1's Nebraska bank accounts. The indictment states Chandran provided false information to Individual 1, who passed this information to Glaspie, a resident of Florida. Glaspie allegedly passed the fraudulent information to investors by marketing the opportunity to invest with Chandran's companies to thousands of investors throughout the United States and internationally, and he transferred the collected investor funds to Individual 1's accounts in Nebraska financial institutions (e.g., First National Bank of Omaha. The indictment states Individual 1 then sent the funds to Chandran company accounts in Los Angeles and Las Vegas. The government claims Individual 1 received and transferred nearly half the investor funds collected (more than $20 million), with Nebraska serving as a pivotal conduit of the charged scheme. While located in Nebraska,

7

Individual 1 served as the scheme's primary messenger between and for Chandran and Glaspie.

### 4. Location of documents and records likely to be involved

Defendants acknowledge receiving 1 TB of materials from the government in a digital format, consisting of nearly 500GB of documents, videos, cell phone analysis, and computer materials. While digital formats "may lessen the inconvenience of document handling, if the need arises, the parties may need to refer to original documents or evidence at trial. In re Apple, Inc., 602 F.3d 909, 914 (8th Cir. 2010). Defendants claim their trial evidence will include records for Chandran's business ventures located in Nevada and California. Based on the allegations in the indictment and superseding indictment, the government's trial evidence will include records of third-party entities such as banks in Florida, Nebraska, Nevada, and California.

### 5. Disruption of the defendant's business unless the case is transferred

There is no evidence that Defendants' business or work will be disrupted if the case remains pending in Nebraska. Irrespective of the trial location, Chandran is unable to conduct business because he is detained pending trial and his business assets were seized. Lee has neither shown nor argued that his opportunity to conduct business is impacted by a Nebraska trial location.

### 6. Expense to the parties

No matter where this case is tried, the parties will incur significant travel expenses. While the defense witnesses are primarily from Nevada and Southern California, the government witnesses will travel from all parts of the country,

including Hawaii, Virginia, Florida, Georgia, Texas, California, Colorado, Illinois, New York, New Jersey, Colombia, and Canada.

7.  Location of counsel

The government's counsel is from Washington, D.C. and Nebraska. Lee retained an attorney from Nevada. Chandran is represented by the Nebraska Public Defender, but upon transfer to Nevada, a Nevada court-appointed attorney could represent Chandran.

8.  Relative accessibility of place of trial

Defendants claim Nevada is a far more accessible site for a trial. Defendants and Individual 1 live in Nevada, and Defendants' witnesses live in Nevada and nearby Southern California. As to all other witnesses and counsel for the government, Defendants claim flights to Las Vegas are far more frequent and accessible. Defendants state Harry Reid International airport has seventy-two airlines providing service throughout the nation and internationally. In comparison, there are twenty-four airlines operating out of Eppley Airfield in Omaha and four operating out of Lincoln, Nebraska, neither of which have international flights. The government concedes that for witnesses, victims, and counsel from Nevada and Southern California, trial in Nevada would be more convenient. But for those from the east coast or midwest, travel and flights will be far shorter to Nebraska than to Las Vegas.

9.  Docket condition of each district or division involved

The judges in Nebraska and Nevada have similar overall caseloads, but Nebraska's caseload is 60% civil and 40% criminal while Nevada's is 90% civil

and 10% criminal. As a result, Nebraska judges have substantially more criminal filings per judge. The average time from filing to disposition of a criminal case in Nebraska is 14 months, compared to approximately 19 months in Nevada. See United States District Courts national Judicial Caseload Profile, https://www.uscourts.gov/file/71612/download.

> 10.   Special elements which might affect the transfer

The charges against Chandran have been pending for a year. The Nebraska Court is familiar with the facts and has invested substantial time on this case, including but not limited to, issuing 95 warrants to seize property purchased with funds obtained from Defendants' alleged fraudulent scheme, conducting numerous status conferences to update the court on the status of discovery access and review, entering protective orders to facilitate discovery, and presiding over the conviction, and now preparing for the sentencing, of a key participant in the alleged scheme. Based on the representations made during status conferences and the evidence of record, Nebraska's Federal Public Defender has spent the last year preparing this case by reviewing the government's voluminous Rule 16 disclosures, interviewing relevant witnesses, and meeting with Chandran. Transfer to Nevada will require a different court-appointed attorney to repeat that work, thereby potentially delaying case resolution and the chance for more than 10,000 alleged victims to partially recover their losses through forfeiture and restitution. United States v. Kanner, No. 07-CR-1023-LRR, 2008 WL 2663414, at *7 (N.D. Iowa June 27, 2008) (denying transfer where the request was nine months after commencement of the prosecution, after discovery was nearly complete and substantive motions had been filed, and on the eve of the court's setting a date for trial).

Moreover, district courts must treat victims "with fairness." 18 U.S.C. § 3771(a)(8). "The victim of the crime, the family of the victim, others who have suffered similarly, or others accused of like crimes, have an interest in observing the course of a prosecution." Gannett Co. v. DePasquale, 443 U.S. 368, 428 (1979) (Blackmun, J., concurring in part and dissenting in part). A trial location in the center of the United States allows equal access for all victims to attend the trial.

Finally, the Eighth Circuit recognizes the importance of having members of a criminal conspiracy sentenced, when possible, by the same district judge. United States v. Lazenby, 439 F.3d 928, 934 (8th Cir. 2006). Here, the Nebraska court has already convicted and preparing to sentence Glaspie, a key participant in Defendants' alleged fraudulent scheme.

Upon consideration of all the factors, the court finds the case should remain in Nebraska. Conduct that occurred in Nebraska, including participation by Individual 1 and Nebraska financial institutions, facilitated transfer of nearly half of the funds—approximately $20 million—allegedly obtained through Defendants' fraudulent conduct. The case has been pending for a year, and over that year, Chandran's counsel, the government's Nebraska counsel, and the Nebraska court have worked to review and understand the facts and legal issues. A transfer to the Nevada court would require Nevada counterparts to repeat that work and review what others have already done, which may further delay the resolution of this case. And having two separate courts entering sentences against key participants in the alleged fraudulent scheme presents the risk of disparate outcomes.

While transfer to Nevada may make it easier for Defendant Lee, his counsel, and some of defense witnesses to attend the trial, it will make it more

time-consuming and expensive for the government's counsel in Washington, D.C., and for the witnesses and victims from the east coast and middle of the United States, and from Canada. Massive cases like this one are expensive in any forum and the lives of everyone involved will be significantly disrupted during the trial wherever it is held. United States v. Stein, 429 F. Supp. 2d 633, 645 (S.D.N.Y. 2006). Merely shifting the burden and expense from one party or group to another is not a good reason for transfer. Kanner, 2008 WL 2663414, at *7. Since the witnesses and victims for this case are located throughout the United States and the world, Nebraska, a central location for this national prosecution, provides an equally accessible forum for litigating the charges against Defendants. The Las Vegas airport may offer more airline and flight options, but Nebraska airports also provide readily available flights to everywhere in the world. See e.g., Kanner, 2008 WL 2663414, at *7 (holding the Northern District of Iowa, situated in the middle of the country, would serve as a convenient mid-point for a nationwide prosecution).

The relevant documents exist at locations throughout the United States. No matter which forum is chosen, if original documents are needed at trial, the parties will likely need to retrieve some of them from another state. The government will no doubt offer documents from Nebraska, Florida, Nevada, and California banking institutions and businesses—third parties to this litigation. Unless the parties stipulate to admissibility, the government will need third party witnesses to secure the original documents and offer them at trial. As to these third-party witnesses, the Nebraska court is a central location. Defendants claim they will need to offer their business records located in Nevada in defense of the charges, but unlike the government witnesses, Defendants are not third parties. Irrespective of where this case is tried, Defendants will be present and they can personally, or through someone they employ and call as a witness, obtain and

12

provide the foundation for admitting originals of their business records into evidence.

The court acknowledges that Defendant Lee, Individual 1, and the Chandran companies are located in Nevada, and Chandran company witnesses live and work in Nevada and Southern California. However, upon consideration of the facts and balancing the respective interests of the parties, witnesses, and victims, the court finds that transfer to the District of Nevada will not be a more convenient forum, and it will not further the interests of the public and Defendants in securing a just, fair, and speedy resolution of this case.

Accordingly,

IT IS ORDERED that Defendants' motions to transfer this case to the District of Nevada, (Filing Nos. 99 and 103), are denied.

Dated this 1st day of August, 2023.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge