IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>vs.<br><br>NEIL SURESH CHANDRAN and<br>BRYAN LEE,<br><br>                      Defendants. | 4:22-CR-3077<br><br><br>ORDER |

       This matter is before the Court on the defendants' objections (filing 108; filing 110) to the Magistrate Judge's Memorandum and Order (filing 106) denying their motions (filing 99; filing 103) to transfer these cases to the District of Nevada. The Court has conducted a *de novo* review pursuant to 18 U.S.C. § 636(b)(1),[1] and agrees with the Magistrate Judge.

       The Magistrate Judge explained the underlying law and her findings at length in her order, and the Court need not revisit them—the Court writes only to addresses issues raised for the first time in the defendants' objections. First, the defendants take issue with the Magistrate Judge's observation that transfer to Nevada now would waste court resources by forfeiting work already done here learning about the case. *See* filing 109 at 2-3. The defendants note

---

[1] There some contrary authority on whether an order on a motion to transfer venue is dispositive or non-dispositive, which determines the district judge's standard for reviewing the Magistrate Judge's decision. *See Midwest Athletics & Sports All. LLC v. Xerox Corp.*, No. 8:17-CV-478, 2018 WL 6427872, at *3 (D. Neb. Dec. 6, 2018). Like Judge Rossiter, the Court is inclined to hold that such an order is non-dispositive. *See id.* at *4. But from an excess of caution, the Court has conducted a *de novo* review in this case.

that no substantive motions have been filed, and the Magistrate Judge is likely to end her term of service before trial anyway. *See* filing 109 at 2-3.

But that overlooks a number of things, starting with the efforts this Court has made—and has planned—to ensure continuity of staff and institutional knowledge during the transition to a new Magistrate Judge. It overlooks the undersigned's own familiarity with the case, both through involvement with preliminary matters and the impending sentencing of the defendants' alleged co-conspirator in case no. 4:23-cr-3010. And it overlooks the fact that there are still several months left in the current Magistrate Judge's term during which her experience will have value. The Magistrate Judge didn't err in finding that judicial efficiency is served by keeping these cases in Nebraska.

Next, the defendants contend that delays associated with providing new counsel for defendant Chandran would be mitigated by his Nebraska public defender's ability to remain on his defense team. Filing 109 at 3-4; filing 111 at 5.[2] Leaving aside the public defender's previous concern about "government-funded travel," the Court has some concern about the effect on its own docket of loaning the Federal Public Defender for the District of Nebraska out to

---

[2] Both defendants seem to criticize the Magistrate Judge for not holding an evidentiary hearing on their motions. Filing 109 at 3; filing 111 at 5. Chandran, for instance, says that by not granting him a hearing, the Magistrate Judge "missed the opportunity to learn how a case may be transferred from on Federal Public Defender's Office to another." Filing 109 at 3. The Court does not find this complaint to be well-taken—it's not the Magistrate Judge's fault that the Federal Public Defender didn't explain this obviously relevant procedure to the Court in his briefing (and, in fact, simply represented that "[t]he Federal Public Defender's Office in Las Vegas, Nevada has agreed to take on Chandran's case if it is transferred, and it can prepare and try the case with far less government-funded travel"). Filing 100 at 13. The missed opportunity here was the defendants', not the Magistrate Judge's.

Nevada for this case. But assuming that the (exceptionally capable) public defender can handle that, the Court's concerns about delaying the prosecution of this case are not assuaged. Even if the chief judges of the Courts of Appeals for the Eighth and Ninth Circuits approve, the most counsel has promised is that what the public defender has learned "will be communicated as necessary" to counsel in the District of Nevada, and that the case "will continue as expeditiously as possible." Filing 109 at 4. That's not the same thing as "as expeditiously as it would have proceeded in Nebraska." Nevada counsel would still have to learn the case, even with help. (Climbing Mount Everest is surely easier with an experienced Sherpa guide, but that doesn't mean it's easy.)

Finally, both defendants dismiss the Magistrate Judge's observation that the prosecution and sentencing in Nebraska of the defendants' alleged co-conspirator, Michael Glaspie, is a relevant consideration. Filing 109 at 4-6; filing 111 at 5-6. Defendant Lee contends that Glaspie's case "bears little relation to the instant matter where proceedings are just beginning and sentencing, should it ever occur, likely years away." Filing 111 at 5. To the contrary: Glaspie was central to the scheme alleged by the government. And the Court already has hundreds of victim impact statements from victims of the alleged conspiracy, relating both to the scope of the conspiracy, its impact, and the potential restitution. Glaspie's restitution, potentially tens of millions of dollars, will probably be joint and several with the defendants here, should they be convicted. Not only does this establish expertise about the alleged scheme, it also raises concerns about consistent rulings—concerns which the Magistrate Judge correctly found counseled in favor of these cases being disposed of by the same district judge.[3]

---

[3] Chandran's counsel accuses the government of indicting Glaspie in Nebraska as part of "a pre-packaged deal" that could have been filed anywhere, and of choosing Nebraska "only

The defendants' remaining arguments were addressed by the Magistrate Judge, and the Court agrees with her disposition of them.[4] And the Court cannot help but note that, nowhere in their several briefs, do the defendants explain why it took Chandran over a year after his indictment in Nebraska to decide that a change of venue was necessary, despite most of the considerations he proffers being apparent from the outset. But regardless of whether delaying these proceedings is the point or simply an unintended side effect, delay is what would result from a transfer. Accordingly, for the reasons stated in this order and the Magistrate Judge's memorandum and order (filing 106),

IT IS ORDERED that the defendants' objections (filing 108; filing 110) are overruled.

Dated this 31st day of August, 2023.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

---

because it is more likely to supply a government-friendly jury for the cases in which Glaspie is expected to testify." Filing 109 at 5. The Court finds no basis for these accusations. The Court notes that Chandran was indicted in Nebraska *before* Glaspie—so it made sense to indict Glaspie in Nebraska too. And leaving aside the assumption that a careful jury selection process can empanel a fair jury in *any* district, the Court sees no reason to believe a Nebraska venire is, on balance, any more likely to be "government-friendly" than a Nevada one.

[4] The defendants' "renewed request for evidentiary hearing" is also denied—the defendants have identified no testimony or other evidence requiring an in-court hearing.