IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>NEIL SURESH CHANDRAN and<br>BRYAN LEE,<br><br>    Defendants. | **CASE NO: 4:22CR3077**<br><br>**BRIEF IN SUPPORT OF MOTION TO DISMISS SUPERSEDING INDICTMENT** |

## Background

Defendant Neil Suresh Chandran is the owner of a group of companies that operate under the banner of "ViRSE." Through these businesses, he has been developing technologies that allow individuals to interact and conduct business in a virtual "metaverse." Although the concept of a virtual universe was in its infancy when Chandran began his endeavors in 2019, virtual worlds are now hailed as "the next evolution of the internet." Bernard Marr, *Forbes*, "Virtual Reality, Real Business: The Impact of the Metaverse on Companies," *Forbes* (Oct. 31, 2023), avail. at https://www.forbes.com/sites/bernardmarr/2023/10/26/ervirtual-reality-real-business-the-impact-of-the-metaverse-on-companies/?sh=521915683c2c.

Chandran financed his companies through the sale of both physical and digital assets. Initial purchasers such as "Individual 1" received packages of cryptographic tokens. The tokens represented virtual currency, digital land or virtual property units, each of which would be represented by Non-Fungible Tokens ("NFTs"), and physical devices and hardware which enabled the viewing of virtual objects and

1

environments. The funds received from those who invested helped finance the development of the ViRSE, but investors were not shareholders in the traditional sense. Instead, they had property rights and currency for the virtual world Chandran was developing.

The "investors" referenced in the Superseding Indictment did not purchase digital or virtual assets through Chandran. Instead, they sent money to Michael Glaspie, who had learned of Chandran's metaverse through "Individual 1." Michael Glaspie marketed various investment opportunities under an entity known as "Coindeal." He added "ViRSE" to the opportunities that he was marketing, but he pitched the investment opportunity in his own way. Chandran had no contact with these "investors," nor did he authorize Glaspie's representations to them.

Notwithstanding the lack of direct communication between Chandran and any of the "investors" referenced in the Superseding Indictment, the government alleges that Chandran's dealings with them were fraudulent. In a Superseding Indictment, the government has charged Chandran and a business associate, Bryan Lee, with one count of conspiracy to commit mail and wire fraud, two counts of mail fraud, three counts of wire fraud, and three counts of money laundering, all in connection with the operation of ViRSE. (Docket #75)

Chandran has moved to dismiss the Superseding Indictment under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure due to two primary defects. First, the Superseding Indictment lacks specificity. Fed. R. Crim. P. 12(b)(3)(B)(iii). Second, the Superseding Indictment fails to state an offense. Fed. R. Crim. P.

12(b)(3)(B)(v). Even if government's allegations are assumed to be true, the Superseding Indictment does not establish the element of materiality that is essential to each count. For both of these reasons, the Superseding Indictment should be dismissed.

## Argument

I. **The Superseding Indictment should be dismissed because the fraud allegations that ground each of the counts lack specificity and fail to state an offense.**

A valid indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Generally, this requirement is satisfied if the indictment "'tracks the statutory language" of the offense charged. *United States v. Sewell,* 513 F.3d 820, 821 (8th Cir. 2008). More is required, however, when an indictment alleges a scheme to defraud under the mail or wire fraud statutes. *United States v. Steffen*, 687 F.3d 1104 (2012). In such a case, the indictment must:

> specify facts "not merely in the general words of the statute, but with such reasonable particularity . . . as will . . . apprise [the defendant], with reasonable certainty, of the nature of the accusation . . . and as will enable the court to say that the facts stated are sufficient in law to support a conviction."

*Id.* at 1113 (quoting *Brown v. United States*, 143 F. 60, 62 (8th Cir. 1906)).

The Superseding Indictment against Chandran fails to meet this standard. It should therefore be dismissed.

**A. Counts 1 through 6 should be dismissed due to lack of specificity.**

Under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, various defects in an indictment may be grounds for dismissal. One ground applicable here is lack of specificity. Fed.R.Crim.P. 12(b)(3)(B)(iii).

Counts 1 through 4 of the Superseding Indictment allege Conspiracy to Commit Mail and Wire Fraud and substantive counts of Mail Fraud and Wire Fraud. A conviction for mail fraud or wire fraud requires: "(1) a scheme to defraud by means of material false representations or promises, (2) intent to defraud, (3) reasonable foreseeability that the mail would be used, and (4) [that] the mail was used in furtherance of some essential step in the scheme." *United States v. Bryant*, 606 F.3d 912, 917 (8th Cir.2010) (quoting *United States v. Parker*, 364 F.3d 934, 943 (8th Cir.2004)); *see also* 18 U.S.C. §§ 1341, 1343. A conviction for conspiracy to commit wire or mail fraud requires the additional showing that "(1) there was an agreement between two or more persons to commit mail and wire fraud, (2) [the defendant] knew of the agreement, and (3) 'the defendant" intentionally joined in the agreement." *United States v. Cole*, 721 F.3d 1016, 1021 (8th Cir. 2013).

The indictment against Chandran arguably alleges each of these elements in general terms. As noted above, however, a general allegation is not sufficient to charge a mail or wire fraud offense because "'the term "scheme to defraud" . . . is not capable of precise definition.'" *Steffen*, 687 F.3d at 1113 (internal citations omitted). It "does not offer [the defendant] much in the way of guidance for determining when specific acts amount to criminal behavior." *Id.* Because of the malleability of the terms "scheme or artifice to defraud," an indictment that rests solely on those terms

4

does not fairly inform a defendant about the charges against which he must defend. *Id.*

The imprecision of the terms "scheme or artifice to defraud" is just one reason that greater particularity is required in an indictment alleging mail or wire fraud. A second reason can be found in the way that the federal mail and wire fraud statutes are interpreted. As the Supreme Court explained in *Neder v. United States*, 527 U.S. 1, 21 (1999), interpreting the mail and wire fraud statutes begins with the statutory language but does not end there. Instead, "there is a necessary second step." *Id.* In addition to honoring the statute's plain language, fraud allegations "must be interpreted with an eye toward the common-law understanding of fraud." *Steffan*, 687 F.3d at 1113; *Neder*, 527 U.S. at 21-22 (quoting *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59 (1911) ("[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense"). Because an allegation of fraud under §§1341 and 1343 must also be consistent with a common law fraud theory, an indictment alleging mail or wire fraud must specifically identify acts that would constitute a scheme to defraud under both the terms of the statute and the common law. *Steffan*, 687 F.3d at 1113.

The Superseding Indictment in this case fails to contain the specificity required by *Steffen* and Fed.R.Crim.P. 12(b)(3)(B)(iii). For Counts I through IV, the "scheme and artifice to defraud" is described in a single paragraph as "a scheme to defraud investors in the Chandran companies through misrepresentations about the

5

Chandran companies and how investor funds would be used." (Superseding Indictment p. 2, ¶ 7, incorporated by reference in paragraphs 10, 14, & 19) It does not describe with any particularity what representations were made to investors, by whom those representations were made, and what proof exists that Chandran knew about or authorized those representations. Nor does it advance a theory as to why Chandran had a duty to disclose to the investors how their funds would be used. The failure to address these matters renders the indictment defective because, in fraud cases, a misrepresentation is only criminal if it is *material*. *Neder*, 527 U.S. at 20-22. Moreover, omissions of information are not categorically fraudulent absent a duty to disclose. *See Steffan*, 687 F.3d at 1113 ( "silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud.") A simple allegation that misrepresentations were made regarding "the Chandran companies and how investor funds would be used" could cover both fraudulent and non-fraudulent activity. It does not sufficiently notify Chandran of the basis of the charges against him.

Another section of the Superseding Indictment which lacks specificity is the section the government has labeled "manner and means of the conspiracy and scheme and artifice to defraud." (Superseding Indictment pp. 3-4, ¶¶ 9(a) – (g)). Discovery provided in this case shows that, aside from speaking to Individual #1 and making one brief appearance in a conference call with Coindeal investors, Chandran had no direct contact with the investors he is said to have defrauded. Michael Glaspie was the one who communicated with the Coindeal "investors." To implicate Chandran in

6

the representations to those investors, the government has alleged that he "caused" Glaspie to make false or misleading statements. (Id.) Such an allegation is irreparably vague. It does not satisfy the requirement that the words of an indictment "fully, directly, and expressly, *without any uncertainty or ambiguity*, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (emphasis added).

In summary, the government has alleged Counts 1 through 6 in general terms that fail to adequately inform Chandran of the charges against him. These counts should be dismissed under Rule 12(b)(3)(B)(iii).

**B. Counts 1 through 6 fail to state an offense and should therefore be dismissed under Federal Rule of Criminal Procedure 12(b)(3)(B)(v).**

In addition to lacking specificity, the Superseding Indictment lacks any allegations that would establish the materiality of the misrepresentations communicated to the investors. Because this element is a necessary component of wire and mail fraud and the conspiracy to commit it, the indictment against Chandran should be dismissed.

A false statement is material "if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *Neder*, 527 U.S. at 16 (quoting *United States v. Gaudin*, 515 U.S. 506, 509 (1995)); *see also United States v. Luna*, 968 F.3d 922, 926 (8th Cir. 2020) ("To defraud someone requires material, affirmative misrepresentations or active concealment of material information for the purpose of inducing action."). The falsehood or omission must be "'reasonably calculated to deceive persons of ordinary

7

prudence and comprehension.'" *United States v. Goodman*, 984 F.2d 235, 237 (8th Cir. 1993) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1415 (3d Cir. 1991)).

Even when accepted as true, the allegations of the Superseding Indictment do not satisfy the test for materiality. Consider the first alleged falsehood, for example: the "false promises of extremely high returns" that Chandran and his associates were said to have made to investors. (Superseding Indictment pp. 3, ¶ 8) Statements promising "high returns" and profitability are quintessential puffery. "Puffing" is "'[t]he expression of an exaggerated opinion—as opposed to a factual misrepresentation—with the intent to sell a good or service.'" *United States v. Burns*, 843 F.3d 679, 684 (7th Cir. 2016) (quoting *Black's Law Dictionary* 1269 (8th ed. 2004)). It involves "ambiguous and vague promises" rather than provably false misrepresentations. *Id; see also Goodman*, 984 F.2d at 239 ("The difference between the legal and illegal promotion is that the illegal scheme involves some affirmative misrepresentation. . . .") Courts agree that puffery is immaterial because "no reasonable person would rely on. . . 'empty superlatives.'" *Burns,* 843 F.3d at 684. As the Seventh Circuit has aptly stated, "[a]lmost all sellers engage in a certain amount of puffing; all buyers, even those who are rather gullible, know this." *United States v. Coffman*, 94 F.3d 330, 334–35 (7th Cir. 1996). Because "it would not do to criminalize business conduct that is customary rather than exceptional and is relatively harmless," the promise of "high returns" does not state the offense of mail or wire fraud or conspiracy to commit fraud. *Id.*

8

The same reasoning applies to the misrepresentations alleged in paragraph 9(c) of the Superseding Indictment. In that paragraph, the government contends that Chandran "caused Glaspie and Individual 1 to make materially false and misleading representations regarding the involvement of prominent business figures, such as Billionaire 1 and Billionaire 2." (Superseding Indictment (Docket No. 75 p. 4, ¶ 4(c)) This statement is one of the better examples of the lack of specificity in the Indictment. Moreover, it is the perfect example of immaterial puffery. "'The law distinguishes 'between misrepresentations that go to the essence of a bargain and those [misrepresentations] that are merely collateral.'" *United States v. Correia*, 55 F.4th 12, 27 (1st Cir. 2022). Assuming *arguendo* that references to Billionaire 1 and Billionaire 2 were actually made, they would clearly fall into the "collateral" category.

The handful of other representations that the Superseding Indictment identifies also fail the materiality test. The Superseding Indictment alleges that Chandran "caused" Glaspie to tell investors that a consortium of wealthy buyers was interested in purchasing Chandran's company at an amount that would yield high returns. (Superseding Indictment p. 3, ¶ 8) Supposedly Chandran provided "a timeline and likely profitability to Individual 1" for when the sale would close, and then personally assured investors that the sale was on schedule. (Superseding Indictment p. 4, ¶ 9(d)) According to the Superseding Indictment, however, there was no consortium about to purchase the company. (Superseding Indictment p. 3, ¶ 9(a))

Chandran disputes these allegations but acknowledges that at this stage of the proceedings they must be accepted as true. *United States v. Hansmei*er, 988 F.3d 428,

9

436 (8th Cir. 2021). However, even if one assumes that these allegations are accurate, they still fail to establish materiality. First, a representation that a sale looked imminent and that the sale would yield high profits is a forward-looking belief, not a guarantee. It is just the sort of predictive statement of opinion and belief that courts have found immaterial. *See, e.g. Lasker v. New York State Electric & Gas Corp.*, 85 F.3d 55 (2d Cir. 1996) (rejecting argument that, by proffering its conviction that its business strategies would "lead to continued prosperity," NYSEG was "insuring that dividend rates would remain constant, or that the stock price would not decline"); *Raab v. Gen. Physics Corp.*, 4 F.3d 286, 290 (4th Cir. 1993) (noting that, while expressions of belief or opinion concerning *current* facts may be material, materiality does not extend so easily to opinions on uncertain future events); *Krim v. Banctexas Group, Inc.*, 989 F.2d 1435, 1446 (5th Cir.1993) (explaining that "projections of future performance not worded as guarantees are generally not actionable under the federal securities laws").

Second, even if the statements regarding a sale could be considered misleading, the Superseding Indictment alleges no facts which, if proven, would show that the sale to a consortium was part of the "essence of the bargain" between Chandran and the investors. *Correia*, 55 F.4th at 27. In fact, the Superseding Indictment provides no information about the investors at all, much less their motivation for investing. The various components of Chandran's metaverse held value regardless of whether the company was also of interest to potential buyers. The companies' inventory of physical assets and hardware were also independently marketable. Absent factual

10

assertions that a sale to a particular consortium was what induced investors to provide financial support, representations about that a possible future sale cannot be considered material. *Neder*, 527 U.S. at 16.

The final statements on which the government bases its fraud charges are alleged misrepresentations about "how investor funds would be used." (Superseding Indictment p. 2, Paragraph 7) The Superseding Indictment says that Chandran "made or caused Glaspie and Individual 1 to make materially false and misleading representations to investors that their funds would be used for covering normal expenses" when, instead, the investor's funds were "misappropriated" to other business ventures and to real estate and luxury vehicles for personal use. (Superseding Indictment p. 3, ¶ 7(b)).

These allegations assume that the businesses to which investor money was diverted were not also supporting the "ViRSE"—an assumption that is false. The allegations also assume that the homes and vehicles were not "normal" business expenses when, in fact, virtual experimentation with home configuration and décor were part of Chandran's metaverse and vehicles were part of its delivery system. But the real problem with the allegations in paragraph 7(b) is that they cannot establish materiality even if they are taken as true.

As a reminder, a material misrepresentation is one capable of influencing the decision-maker to which it is addressed. *Neder*, 527 U.S. at 16. A material omission is one that an individual has a duty to disclose. *Steffan*, 587 F.3d at 1116. The Superseding Indictment alleges no facts that could explain why an individual

11

investing in emerging virtual technologies would be influenced by a mere assurance that their funds would be used for "normal expenses." Moreover, the Superseding Indictment fails to explain how a sale of physical and digital assets from a marketplace gives rise to a duty on the part of the seller to tell the purchaser how their proceeds will be used. Without factual assertions that would establish materiality, any misrepresentations that might have been made about "how investor funds would be used" cannot constitute fraud.

In summary, a valid indictment must contain "the essential *facts* constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "Conclusory allegations of deception or fraud will not suffice." *O'Neill v. Maytag*, 339 F.2d 764, 768 (2d Cir. 1964). The Superseding Indictment is devoid of facts which, taken as true, would establish the materiality needed for a conviction on Counts 1 through 6. Those counts should be dismissed for failure to state an offense.

### C. Because Chandran's actions did not constitute unlawful activity, Count 7 through 9 must also be dismissed.

Counts 7 through 9 of the indictment allege three counts of money laundering in violation of 18 U.S.C. § 1957. Section 1957 prohibits "knowingly engag[ing] in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957(a). It requires proof of four elements:

> (1) [D]efendant conducted, or attempted to conduct a financial transaction which in any way or degree affected interstate commerce or foreign commerce; (2) the financial transaction involved proceeds of illegal activity; (3) defendant knew the property represented proceeds of some form of unlawful activity; and (4) defendant

12

> conducted or attempted to conduct the financial transaction knowing the transaction was "designed in whole or in part [ ] to conceal or disguise the nature, the location, the source, the ownership *1262 or the control of the proceeds of specified unlawful activity."

*United States v. Phythian*, 529 F.3d 807, 813 (8th Cir. 2008).

In order to state an offense under § 1957, there must be "unlawful activity" from which proceeds were derived. *Id.* As explained above, the government has not alleged facts which, if proven true, constitute unlawful activity. Assuming Chandran and his alleged co-conspirators made the misrepresentations to investors that the government alleges they made, those misrepresentations were not material to the transactions and therefore not fraudulent. Without underlying illegal activity, there can be no money laundering. Counts 7 through 9 should therefore be dismissed.

### D. Chandran's assets are not subject to forfeiture.

For the same reasons that the money laundering counts should be dismissed, the court should deny forfeiture of any of Chandran's assets. Since Chandran's alleged activities do not constitute criminal offenses, any property derived from those activities is not subject to forfeiture.

### Conclusion

The Superseding Indictment in this case lacks specificity and fails to state an offense. Indictments that are defective in these respects are subject to dismissal under Federal Rule of Criminal Procedure 12(b)(3)(B). The court should grant Chandran's Motion and dismiss all counts of the Superseding Indictment.

13

NEIL SURESH CHANDRAN, Defendant,

By:   <u>s/ David R. Stickman</u>
      **DAVID R. STICKMAN**
      **Federal Public Defender**
      222 South 15th Street, Ste. 300N
      Omaha, NE 68102
      (402) 221-7896
      fax: (402) 221-7884
      e-mail: david_stickman@fd.org