IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiffs, | **4:22CR3077** |
| vs. | |
| NEIL SURESH CHANDRAN, and BRYAN LEE, | **FINDINGS, RECOMMENDATION, AND ORDER** |
| Defendants. | |

This matter is before the Court on Defendants'[1] motions for bill of particulars, Filing Nos. 155 and 166, and motions to dismiss. Filing Nos. 157 and 163. Also before the Court are Defendants' motions to sever. Filing Nos. 151 and 168. The Court held an evidentiary hearing on Defendants' motions on October 17, 2024. At the conclusion of the hearing the Court ordered a transcript and deemed the matter submitted upon receipt of the transcript. A transcript has now been received, Filing No. 203, and this matter is ripe for disposition.

For the reasons stated below, the motions for bill of particulars and motion to sever are denied. Further, the undersigned recommends the motions to dismiss be denied.

---

[1] Defendant Lee joins in Defendant Chandran's motions and adopts his arguments and factual presentations. The Court considers the motions together and the analysis within pertains to both defendants unless otherwise noted.

## BACKGROUND

The indictment against Defendant Chandran was filed on June 14, 2022.  It alleges Chandran violated federal law by engaging in monetary transactions in property derived from unlawful activity (hereinafter "money laundering") and using interstate wire and mail communications to obtain monetary investments by fraud, which he then misappropriated to either launch other business ventures or to personally benefit himself and others. Filing No. 1. A superseding indictment adding Defendant Lee was filed on May 16, 2023, alleging Lee and Chandran engaged in money laundering and conspired to commit mail and wire fraud, as alleged in the initial indictment. Filing No. 75.

The superseding indictment alleges the following details as to Defendants' conspiracy and scheme to defraud investors. Beginning in or around June 2018 and continuing until on or about June 29, 2022, Chandran, Lee, and others conspired and agreed to engage in a scheme to defraud investors in Chandran's companies[2] through misrepresentations about the Chandran companies and how investor funds would be used. Filing No. 75 at 2 ¶7. The indictment alleges Defendants sought to enrich themselves through false promises of high returns, concealing the true status of their investments and how investor funds were being used. Id. at 2 ¶8.

According to the indictment, Chandran held himself out as the owner of the Chandran companies which purported to develop virtual-world technologies, including its own cryptocurrency for use in its metaverse. Filing No. 75 at 1 ¶1. Lee was allegedly the signatory on bank accounts and owner/sole director and officer for ViMarket, one of the Chandran companies. Filing No. 75 at 1 ¶2. Lee allegedly took direction from Chandran on disbursing funds sent to ViMarket as well as

---

[2]  The indictment alleges these companies include but are not limited to FreeVi Lab, Studio Vi, Inc., ViDelivery, Inc. ViMarket, Inc., and Skalet USA Inc. Hereinafter, the undersigned refers to these companies as "the Chandran companies."

unilaterally disbursing and spending funds from ViMarket accounts. Filing No. 75 at 1 ¶2.

Defendants' alleged co-conspirator Michael Glaspie[3] supposedly marketed, collected, and transferred funds for the Chandran companies. *Id.* at 2 ¶3. Individual 1 allegedly assisted Glaspie in raising money for CoinDeal, an investment opportunity with Chandran companies. *Id.* Individual 1 is alleged to have transferred investor money raised by Glaspie to the Chandran companies through his bank accounts and paid off credit cards in his name with investor funds. *Id.* at 2 ¶4.

The manner and means of the alleged conspiracy include the following allegations: that Chandran caused funds to be solicited based on false promises that one or more of the Chandran companies was being purchased by a consortium of wealthy buyers; mislead investors on how their funds would be used; misappropriated investor funds; made materially false representations about the involvement of prominent business figures; and made materially false representations about the timeline and profitability of transactions. Filing No. 75 at 3 ¶9.

The superseding indictment contends investor funds were under the control of Glaspie and then often transferred to bank accounts under Individual 1's control before being distributed to the Chandran companies, which included bank accounts controlled by Lee. *Id.* at 4 ¶9(e). The funds were transferred through credit cards, wire transfers, virtual currency and at times, cashier's checks sent by interstate mail. *Id.* Despite representing to investors that funds would be used for normal operating expenses or "cash on hand," funds were allegedly misappropriated to fund other ventures and for the personal benefit of Chandran

---

[3] Glaspie plead guilty to one count of wire fraud, 18 U.S.C. § 1343, in *United States v. Glaspie*, 4:23-cr-3010-JMG-CRZ.

and Lee. *Id.* Lee and Chandran allegedly purchased personal homes with investor funds, and later tried to justify their misappropriations through the Chandran companies. *Id.* at 4–5 ¶9(f).

Defendants were charged together in the superseding indictment with the following: Count 1, conspiracy to commit mail and wire fraud; Counts 2–3, mail fraud; Counts 4–6 wire fraud; Counts 7–9, money laundering. Filing No. 75.

Prior to the superseding indictment, Chandran and Lee communicated with each other regularly through WhatsApp messages. Filing No. 203 at 49; Filing No. 201, Exhibits 103 and 105. The messages presented to the Court appear to be instant messaging conversations between the codefendants and range from February 2021 through June 2022. *Id.* Additionally before the Court is Lee's statement to FBI Special Agents Zachary Carey and James Brooks at Lee's residence on July 1, 2022, prior to the superseding indictment being filed.[4] Filing No. 201, Exhibit 103 at 37.

## 1. Motion to Dismiss

Defendants move to dismiss the superseding indictment under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure for two reasons. First, Defendants contend the indictment lacks specificity, Fed. R. Crim. P. 12(b)(3)(B)(iii), and second, the indictment fails to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). For the reasons stated below, the undersigned recommends the motions to dismiss be denied.

An indictment is generally sufficient "unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the

---

[4] Exhibit 103 references text messages between Special Agent Jeremy Desor and Lee between November 10, 2023, and December 12, 2023. Filing No. 201, Exhibit 103 at 2. However, these text messages are not included in the exhibit and neither party makes specific arguments relating to them. As the text messages are not properly before the Court, the Court does not consider them as part of this motion.

defendant was convicted." *United States v. Hayes*, 574 F.3d 460, 472 (8th Cir. 2009) (quoting *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008)). Whether an indictment sufficiently states an offense, then, depends on the elements of the charged offense. *United States v. Hansmeier*, 988 F.3d 428, 436 (8th Cir. 2021). "A slightly greater level of detail is required for" a mail or wire fraud indictment which must "specify facts . . . with such reasonable particularity as will apprise the defendant, with reasonable certainty, of the nature of the accusation and as will enable the court to say that the facts stated are sufficient in law to support a conviction." *Steffen*, 687 F.3d at 1113 (quoting *Brown v. United States*, 143 F. 60, 62 (8th Cir. 1906)); *United States v. Welker*, 75 F.4th 820, 822 (8th Cir. 2023). The question of whether the facts alleged in an indictment adequately state an offense therefore turns on the elements of that offense. *See United States v. Flute*, 929 F.3d 584, 587 (8th Cir. 2019).

The mail and wire fraud statutes at issue here prohibit the use of interstate mail or wire facilities to effect "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. §§ 1341, 1343. To prove the existence of a fraudulent scheme, the government must establish: "(1) there was a deliberate plan of action or course of conduct to hide or misrepresent information; (2) the hidden or misrepresented information was material; and (3) the purpose was to get someone else to act on it." *United States v. Luna*, 968 F.3d 922, 926 (8th Cir. 2020); *Hansmeier*, 988 F.3d at 436. A conviction for conspiracy to commit wire or mail fraud requires the additional showing that "(1) there was an agreement between two or more persons to commit mail and wire fraud, (2) [the defendant] knew of the agreement, and (3) [the defendant] intentionally joined in the agreement." *United States v. Cole*, 721 F.3d 1016, 1021 (8th Cir. 2013).

Defendants argue that Counts 1–6 of the Superseding Indictment should be dismissed for lack of specificity pursuant to Rule 12(b)(3)(B)(iii). Filing No. 158 at

3. First, Chandran argues "scheme to defraud" is not capable of precise definition and greater particularity is required than can be found in the superseding indictment. Filing No. 158 at 5. Along these same lines, Defendants contend the allegations about the alleged misrepresentations made by Defendants could cover both fraudulent and non-fraudulent activity and do not sufficiently notify Defendants of the charges. Filing No. 158 at 6. Finally, Chandran takes issue with the allegation that he "caused" Michael Glaspie to make false or misleading statements to investors. *Id*.

The Court disagrees. As an initial matter, while the term "scheme to defraud" may seem "slightly amorphous" the Eighth Circuit has offered concrete guidance on what the mail and wire fraud statutes require, consistent with the elements outlined herein. *Hansmeier*, 988 F.3d at 436 (citing *Britton*, 9 F.3d 708, 709 (8th Cir. 1993)).

Here, the superseding indictment (1) tracks the language of the statutes, (2) identifies the federal criminal laws that are the subjects of the conspiracy, (3) alleges each of the essential elements of the crime of wire fraud, mail fraud, and the conspiracy to commit such, (4) states the nature of each count and the fraudulent scheme that was the subject of the conspiracy, (5) specifies the specific mailings and wire transactions, as well as the approximate time period during which the conspiracy took place, (6) states the locations from which the scheme was allegedly operated, and (7) specifies overt acts that furthered the conspiracy. *See U.S. v. Hayes*, 574 3d 460, 472-73 (8th Cir. 2009).

While Chandran contends otherwise, the superseding indictment expands on the "scheme to defraud" beyond paragraph 7. *See* Filing No. 158 at 5. Rather, it specifically delineates the alleged conspiracy scheme, Filing No. 75 at 2 ¶7, the purpose, *Id*. at 3 ¶8, and the manner and means, Id. at 3, ¶9. The mail fraud counts allege the specific mailings, *Id*. at 7 ¶18, the wire fraud counts allege the specific

wire transmissions, *Id*. at 8-9 ¶23, and the money laundering counts allege the specific monetary transactions. *Id*. at 9 ¶25.

Further, while Chandran takes issue with the indictment alleging he "caused" the misrepresentations to be made, this language is consistent with the mail and wire fraud statutes and the Eighth Circuit has held that the misrepresentations do not have to be made directly to the victims. *See* 18 U.S.C. § 1343 ("causes to be transmitted"); 18 U.S.C. § 1341 ("causes to be delivered"); *Hansmeier*, 988 F.3d 428, 437 ("It is not the case that the victims targeted must be the direct recipients of the materially deceptive statement or concealment.").

Based on all of the allegations, the indictment apprises Defendants of the nature of the offenses and the facts on which they are based and does not lack specificity.

Defendants additionally argue that Counts 1 through 6 fail to state an offense and should be dismissed pursuant to Rule 12(b)(3)(B)(v) because "the Superseding Indictment lacks any allegations that would establish the materiality of the misrepresentation communicated to investors." Filing No. 158 at 7.

For criminal liability to attach, a scheme to defraud must consist of material misrepresentations: misrepresentations that have "a natural tendency to influence, or [are] capable of influencing, the decision of the decision-making body to which [they are] addressed." *United States v. Heppner*, 519 F.3d 744, 749 (8th Cir. 2008) (quoting *Preston v. United States*, 312 F.3d 959, 960 (8th Cir. 2002) (per curiam)); see also *Luna*, 968 F.3d at 926 ("To defraud someone requires material, affirmative misrepresentations or active concealment of material information for the purpose of inducing action."). A scheme to defraud need not involve affirmative lies. *Hansmeier*, 988 F.3d at 436.

Defendants' arguments are again misplaced. The superseding indictment includes allegations that Defendants made or caused to be made materially false

and misleading representations. "In reviewing the sufficiency of an indictment, [the Court] accept[s] the government's allegations as true, without reference to allegations outside the indicting document[,]' " (quoting *United States v. Farm & Home Sav. Ass'n*, 932 F.2d 1256, 1259 n.3 (8th Cir. 1991)), and does not consider the sufficiency of the evidence. *See United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001). Here, the superseding indictment, which the Court accepts as true, includes various affirmative misrepresentations including that (1) Chandran made or caused Glaspie or Individual 1 to make representations to investors that the companies would yield extremely high returns when purchased by wealthy buyers, Filing No. 75 at 3 ¶9(a); that investors' funds would be used for normal operating expenses not other business ventures or luxury cars and real estate, *Id*. at 3 ¶9(b); that prominent business figures were involved, *Id*. at 4 ¶9(c); and that the sale of one of the Chandran companies was imminent, *Id*. at 4 ¶9(d). These allegations of affirmative misrepresentations make *United States v. Steffen*, on which Defendants rely, distinguishable. *See Steffen*, 687 F.3d at 1109. (holding that misrepresentation through mere silence is insufficient to allege a scheme to defraud). At trial, Defendants are "free to dispute the facts, offer alternative explanations for [their] conduct, or provide context to any of the actions alleged," including any argument that certain misrepresentations or omissions were immaterial to investors. *Hansmeier,* 988 F.3d at 438. Nonetheless, the superseding indictment does not fail to state an offense with regard to Counts 1 through 6.

Lastly, Defendants contend that Counts 7 through 9 and the forfeiture allegations should be dismissed because the activities alleged in Counts 1 through 6 do not constitute unlawful activities and, consequently, there can be no corresponding money laundering or asset forfeiture. Filing No. 158 at 12-13. As the Court has determined that Counts 1 through 6 sufficiently state a claim, Defendants' arguments relating to the remaining counts and forfeiture allegations are meritless.

The superseding indictment neither lacks specificity nor fails to state an offense. Rather, the superseding indictment sufficiently states the offenses charged. For these reasons, the undersigned recommends Defendants' motions to dismiss, Filing Nos. 157 and 163, be denied.

## 2. Motion for Bill of Particulars

Defendants also move to compel the government to file a bill of particulars arguing it is necessary to sufficiently advise them of the charges and enable them each to prepare a defense. Defendants contend the superseding indictment is full of "generalized allegations of fraud, with few named witnesses or victims, dates, statement or actions and their specific effects." Filing No. 156 at 1. Defendants take issue with the superseding indictment, arguing it simply alleges that "fraud occurred over a four-year period, that unnamed individuals were victimized for unspecified amounts of damages, does not indicate that any named individuals were misled, and does not indicate with specificity what dates, named persons, acts or statements constitute the fraud." *Id.* Along the same lines, Defendants contend the discovery provided is voluminous and extensive but, despite this, the "fraudulent representations as alleged in the superseding indictment [are] not apparent." Filing No. 156 at 3.

Chandran specifically requests a bill of particulars to include the following:

Count 1: An indication as to when the representation was made, how it was made, to whom it was made;

Paragraph 9(b): (1) how and when he caused Glaspie and Individual 1 to make materially false and misleading representations to investors; (2) what investor funds were misappropriated to launch other business ventures for the personal benefit of Chandran and when those investor funds were misappropriated and (3) what other business ventures are referenced in this subparagraph.

Paragraph 9(c): how, to whom and when Chandran made materially false and misleading representations regarding the involvement of

prominent business figures and the specific representation that was allegedly made.

Paragraph 9(d): how Chandran caused Glaspie and individual 1 to raise funds for investors as well as the precise "materially false and misleading information about the Transactions."

Paragraph 9(e): when the transactions occurred, by whom, the amount of money involved and accounts involved.

Paragraph 23: the names and addresses of the "others known and unknown to the grand jury" who transmitted and caused to be transmitted information by means of wire communications and the e-mail address of the sender and recipient of said wire communication.

Filing No. 155 at 3-4.

Lee does not specify what information he seeks in a bill of particulars but generally contends he is unable to determine what conduct the government believes is fraudulent and that he is in a "worse position" than Chandran as he was "only a glorified book keeper who had little to no knowledge of the misrepresentations, promises, scope of the fraud, number of investors involved, and other details as to how the scheme operated." Filing No. 167 at 2.

As noted above, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and, for each count, "must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). A defendant may move for a bill of particulars when he believes the indictment "does not provide enough information to prepare a defense." *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009) (citing Fed. R. Crim. P. 7(f)). "The purpose of a bill of particulars is to inform the defendant of the nature of a charge with sufficient precision to enable him to prepare for trial and to avoid or minimize the danger of surprise at trial." *Id.* (internal quotation marks omitted) (quoting *United States v. Hernandez*, 299 F.3d 984, 989–90 (8th Cir. 2002)).

The district court has broad discretion in granting or denying a bill of particulars. *United States v. Stephenson,* 924 F.2d 753, 762 (8th Cir. 1991).

To determine whether a bill of particulars is necessary, the Court should examine whether the indictment adequately states an offense. "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." *United States v. Bowie*, 618 F.3d 802, 817 (8th Cir. 2010) (quoting *U.S. v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993)). Only when an essential element "of substance" rather than "of form" is omitted is an indictment fatally insufficient. *U.S. v. Beasley*, 688 F.3d 523, 532 (8th Cir. 2012) (quoting *United States v. Mallen*, 843 F.2d 1096, 1102 (8th Cir.1988)).

Having already evaluated the sufficiency of the indictment above, the Court will not belabor the point. The undersigned finds that the superseding indictment adequately states an offense and provides sufficient detail for Defendants to understand the nature of the charges, prepare a defense, and avoid surprise. For the charges of mail fraud, wire fraud, and money laundering, the indictment delineates the specific mailing, wire transfer, and monetary transaction including the date on which each took place. Filing No. 75 at p. 7-10. Further, paragraph 9 of the indictment, which Chandran takes issue with, alleges the following details about the manner and means of the scheme:

> Chandran caused these individuals to make false representations that investor funds would be used for normal business expenses, when in fact substantial amounts of the funds were misappropriated for other businesses or for Chandran and Lee's personal benefit.

> Chandran caused these individuals to make false and misleading representations about the involvement of prominent billionaires (anonymized but known to Chandran and Lee) in an acquisition deal, when they in fact had none.

11

Chandran joined at least one conference call with investors in a specific named business to give investors false assurances that the acquisition of the business was about to close. This conference call also forms the basis for Count 5, where it is further described and dated.

Chandran acquired the investor funds through a variety of means: through credit cards, wire transfers, and virtual currency, often transferred to bank accounts under Individual 1's control, before being distributed to Chandran's companies, including to bank accounts controlled by Lee.

Filing No. 75 at 3-4 ¶ 9.

Although the superseding indictment arguably contains less allegations regarding Lee, it sufficiently gives Lee notice of the charges and specifically alleges he conspired with Chandran as part of the same scheme, was the director of ViMarket (one of the Chandran's companies) controlling bank accounts and investors' funds, disbursed said funds, used investor funds to purchase a home for personal use, and caused a specific wire transfer. *See* Filing No. 75 at 1-9 ¶2,7,8,9(e), 9(f), 23.

Finally, while Defendants primarily argue that the Government's discovery is so voluminous that they are unable to determine what materials are relevant to the charges, Filing No. 167 at 2, this does not further their position. "[A] bill of particulars is not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present at trial." *United States v. Huggans*, 650 F.3d 1210, 1220 (8th Cir. 2011). And, as Defendant Lee points out, large discovery disclosures often weigh against issuing a bill of particulars. *See United States v. Milk*, 66 F.4th 1121, 1133 (8th Cir. 2023) (finding no abuse of discretion in denying defendant's motion for a bill of particulars where

the government provided voluminous discovery prior to trial); *United States v. Lundstrom*, 880 F.3d 423, 439 (8th Cir. 2018) (affirming denial of bill of particulars and noting the government's provision of searchable electronic files, a lengthy index, and deposition transcripts).

The Government outlines various discovery documents provided to Defendants which illustrates, while discovery may be voluminous, it is also informative. This includes grand jury transcripts of case agent testimony, search warrant affidavits, and interview memoranda with Individual 1 and Glaspie. Filing No. 174 at 5. The documents underlying the wire transmissions charged in the superseding indictment have also been produced. *Id.* The Government further states it has provided "detailed indices" with each discovery production to assist Defendants. *Id.* A defendant's need for a bill of particulars is diminished when the government has made sufficient disclosures concerning its evidence and witnesses by other means. *See United States v. Chen*, 378 F.3d 151 (2nd Cir. 2004) (district court did not abuse discretion in denying bill of particulars where government provided FBI reports/interviews, grand jury testimony, and recordings).

In essence, Defendants seek a summary of the evidence the Government intends to use at trial. But a bill of particulars is not a discovery tool. *United States v. Shepard*, 462 F.3d 847, 860 (8th Cir. 2006). Nor is it an "itemized disclosure of the government's trial evidence." *U.S. v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993); *United States v. Matlock*, 675 F.2d 981, 986 (8th Cir.1982) ("Acquisition of evidentiary detail is not the function of the bill of particulars."). And Defendants are not entitled to a summary of how the government has marshalled the voluminous evidence it has provided. *See United States v. Manzi*, No. 4:19CR3094, 2021 WL 6077121, at *4 (D. Neb. Dec. 23, 2021).

Because the superseding indictment sufficiently outlines each element of the offenses charged and is not so vague and conclusory that Defendants lack

notice of the crimes they are charged with committing, Defendants' motion for a bill of particulars will be denied.

### 3. Motion to Sever

Under Federal Rule of Criminal Procedure 8(b), an indictment may charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Trying codefendants together "give[s] the jury the best perspective on all the evidence and therefore increases the likelihood of the correct outcome." *U.S. v. Darden*, 70 F.3d 1507, 1528 (8th Cir. 1995). However, "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

"[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. A defendant seeking severance "must show real prejudice, that is, something more than the mere fact that he would have had a better chance for acquittal had he been tried separately." *United States v. Mickelson*, 378 F.3d 810, 817-18 (8th Cir. 2004) (internal quotation omitted). "A defendant can show real prejudice either by showing that [his] defense is irreconcilable with the defense of [his] codefendant or codefendants or that the jury will be unable to compartmentalize the evidence as it relates to separate defendants." *United States v. Jackson*, 64 F.3d 1213, 1217 (8th Cir. 1995) (quotation omitted). A defendant seeking severance has the heavy burden of demonstrating that the joint trial will

14

impermissibly infringe on her right to a fair trial. *United States v. Baker*, 98 F.3d 330, 340 (8th Cir. 1996).

Chandran and Lee make two arguments in support of severance: (1) their joinder violates their specific trial rights under the Confrontation Clause pursuant to *Bruton v. United States*, 391 U.S. 123 (1968), and (2) they would suffer real prejudice in a joint trial based on the potential admissible evidence, the weight of the evidence, and their respective defenses. Filing No. 152 at 4. The Court addresses each argument below.

### a. *Bruton* issues

In *Bruton*, the Supreme Court held "'that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial,' even with a proper instruction." *Samia v. United States*, 599 U.S. 635, 647 (2023) (referring to its prior decision in *Bruton* and quoting *Richardson v. Marsh*, 481 U.S. 200, 207 (1987)). There, one of the defendants, Evans, who was tried together with Bruton, confessed during an interrogation that he and Bruton had committed armed robbery. *Bruton*, 391 U.S at 124. Though Evans did not testify at trial, the court accepted testimony describing his confession. *Id.* The Supreme Court reversed Bruton's conviction, holding that the admission at a joint trial of a nontestifying defendant's statement inculpating a co-defendant violates the co-defendant's Confrontation Clause rights. *Id.* at 135-136.

As an initial matter, the only statements presently before the Court are WhatsApp messages between the two Defendants as well as a statement made by Lee to the FBI on July 1, 2022.[5] Filing No. 201, Exhibit 103 at 37; Exhibit 105.

---

[5]    Both parties make arguments about other potential statements made to law enforcement, but those statements are not properly before the Court and the Court will not speculate as to their potential impact. *United States v. Solomon*, No. 23-CR-156, 2024 WL 398552, at *4 (D. Minn. Feb. 2, 2024), *aff'd as modified sub nom. United States v.*

As to the WhatsApp messages, the government argues that *Bruton* does not apply because any statements between the parties are non-testimonial, and thus, the Confrontation Clause is not implicated.[6] Filing No. 175 at 4. The Court agrees. In the landmark case of *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause prohibits the admission of evidence of out-of-court "testimonial" statements against a criminal defendant, unless the defendant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. 541 U.S. 36, 53–54 (2004). It is now clear that the Confrontation Clause does not apply to nontestimonial statements by an out-of-court declarant. *See Davis v. Washington*, 547 U.S. 813, 821–22 (2006); *Whorton v. Bockting*, 549 U.S. 406, 412, (2007) ("[T]he Confrontation Clause has no application to [non-testimonial out-of-court statements]"); *United States v. Dale,* 614 F.3d 942, 955 (8th Cir. 2010).

The Supreme Court has not outlined a complete list of what may be included within the category of testimonial statements, but *Crawford* specified that plea allocutions, grand jury testimony, prior trial testimony, preliminary hearing testimony, and police interrogations are testimonial statements. *Crawford*, 541 U.S. at 68. Further, casual statements to an acquaintance, business records, and statements of coconspirators have been found to be nontestimonial. *Crawford*, 541 U.S. at 56; *United States v. Lee*, 374 F.3d 637, 644 (8th Cir. 2004); *United States v. Reyes*, 362 F.3d 536, 541 (8th Cir.2004).

---

*Noble*, No. 23-CR-156(05), 2024 WL 1366540 (D. Minn. Apr. 1, 2024) (rejecting defendant's *Bruton* claim as "premature" where "it [was] not clear what evidence" the claim was based on).

[6] At the time of the government's brief, neither Defendant had submitted evidence of the specific statements they argued implicated Bruton. The Court received evidence at the hearing on October 17, 2025 and oral argument was heard. Despite the lack of briefing as to the specific statements at issue, the government's arguments are still applicable.

Here, Lee identifies approximately 40 pages worth of WhatsApp exchanges between the co-defendants he contends implicate *Bruton*. Filing No. 201, Exhibit 105. The Court finds these statements are clearly nontestimonial and not "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52. Rather, as Lee describes them, the communications between Lee and Chandran include hundreds of messages between friends over an extended period of time, Filing No. 169 at 5, and are nontestimonial.[7] *See Lee*, 374 F.3d at 645 (distinguishing casual remarks to an acquaintance from formal testimonial statements to law enforcement).

As to Lee's statement to the FBI on July 1, 2022, assuming it is testimonial, there is nothing in this statement that cannot be remedied with a limiting instruction. The Supreme Court has recently found that *Bruton* does not apply if the government submits versions of the evidence that "d[o] not directly inculpate the defendant and [are] subject to a proper limiting instruction." *See Samia*, 599 U.S. at 655. If the Government were to introduce the statement incriminating either defendant, it can do so by ensuring no other defendant is "directly" or "facially" incriminated. *Id.* at 647; *Gray v. Maryland*, 523 U.S. 185, 194 (1998) (reiterating that the *Bruton* rule applies only to "directly accusatory" incriminating statements). Accordingly, the Court finds the *Bruton* rule requiring severance inapplicable.

### b. Prejudice

---

[7] While unnecessary to reach, the Court notes that co-conspirator statements that are admissible under Federal Rule of Evidence 801(d)(2)(E) are not subject to *Bruton* and the confrontation clause permits the use of the statement. *United States v. Coco,* 926 F.2d 759, 761 (8th Cir. 1991) ("We have explicitly held that *Bruton* is not violated where the hearsay statement is otherwise admissible under Rule 801(d)(2)(E)."). Because the statements are nontestimonial, the Court need not decide if they fall under Rule 801(d)(2)(E).

Defendants attempt to establish real prejudice warranting severance in a few ways. Chandran first argues the government would be able to introduce statements made by Lee that would not be admissible if tried separately. Filing No. 152 at 3-4.

The Supreme Court has recognized that severance may be appropriate when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a co-defendant. *Zafiro v. U.S.*, 506 U.S. 534, 539 (1993). However, "severance is not required merely because evidence that is admissible against some defendant may be damaging to others." *Mickelson*, 378 F.3d 810 (citing *United States v. Blum*, 65 F.3d 1436, 1444 (8th Cir. 1995)). Rather, the "risk of prejudice posed by joint trials is best cured by careful and thorough jury instructions." *Mickelson,* 378 F.3d at 818 (cleaned up). What is required for a severance is a "specific showing that a jury could not reasonably be expected to compartmentalize the evidence." *Hively*, 437 F.3d 752, 765 (8th Cir. 2006) (citing *United States v. Lueth*, 807 F.2d 719, 731 (8th Cir. 1986).

On the record before the Court, it is unclear what the allegedly prejudicial statements of the co-defendants are and to what extent they would prejudice either Defendant. Despite having the burden as the moving party, Defendants do little more than allege that codefendants' statements may directly or indirectly incriminate the other. This is not enough. *U.S. v. Spotted Elk*, 548 F.3d 641, 661 (8th Cir. 2008) (rejecting appellant's claim of prejudice from the admission of co-conspirator statements because the appellant had not "identified any particular statement" that was or ought to have been inadmissible and had "lumped together [twenty statements] . . . with no particular argument about particular statements.") Under these facts, it would be premature to sever a trial based on unsubstantiated possibility that the Government may offer some unidentified statements. *See*

*United States v. Good*, No. 4:18CR3088, 2019 WL 1492914, at *4 (D. Neb. Apr. 4, 2019).

Chandran does argue that Lee's statements include "opinion evidence" that are potentially admissible as to Lee's mental state, but inadmissible as to Chandran and unfairly prejudicial. Without identifying the specific WhatsApp messages, Chandran generally argues these messages include Lee accusing Chandran of fraud and offering opinions that are incriminating. Filing No. 152 at 1-2, 4. But just because some evidence may be admissible against Lee that is inadmissible, damaging, or unsavory to Chandran, does not mean that severance is appropriate. *Hively*, 437 F.3d at 765 (finding while some "unsavory" evidence did not pertain to all defendants the court's instructions were sufficient to guard against any spillover effect of evidence applicable only to other defendants.) The Court believes Defendants' can still receive a fair trial if allegedly prejudicial evidence is admitted against one Defendant and not the other through a curative jury instruction. Accordingly, Defendants have not met their burden that absent severing the claims, they will be prejudiced at trial.

Next, Defendant Lee argues the weight of the evidence against Chandran is significantly greater than Lee and the jury will be unable to compartmentalize the evidence as it relates to the separate defendants. Filing No. 169 at 7. Despite Lee's concerns, "severance is never warranted simply because the evidence against one defendant is more damaging than that against another." *Hively*, 437 F.3d at 765; *see also U.S. v. Lewis*, 557 F.3d 601, 610 (8th Cir. 2009) (finding a defendant "was not entitled to severance simply because the evidence against him was less damaging than was the evidence against [his co-defendant]"). Besides, "disparity among the defendants in extent of involvement and culpability is commonplace in conspiracy cases and does not alone show the kind of prejudice that would require a district court to sever, rather than to respond with some less drastic measure such as a curative instruction." *Spotted Elk*, 548 F.3d at 658. At this time, Lee's

19

claim of prejudice is speculative and insufficient to overcome the presumption in favor of a joint trial.

Finally, to the extent Defendants argue their defenses are irreconcilable warranting severance, the Court again disagrees. The Eighth Circuit has stated that "[t]he existence of antagonistic defenses does not require severance unless the defenses are actually irreconcilable." *United States v. Johnson*, 944 F.2d 396, 402 (8th Cir.1991). "[A] defense is irreconcilable when the jury, to believe the core of one defense, must necessarily disbelieve the core of another." *Id*. at 403. Antagonistic defenses require severance "only when there is a danger that the jury will unjustifiably infer that this conflict . . . alone demonstrates that both are guilty." *United States v. Ortiz*, 315 F.3d 873, 898 (8th Cir.2002) (internal quotation marks omitted). While some of Lee's statements may be "antagonistic" to Chandran's defense that no fraud occurred, this does not warrant severance. *See Lewis*, 557 F.3d at 610 (finding defenses were not irreconcilable where one defendant argued that no fraud was committed and the other argued he did not intend to defraud anyone or agree to commit any crimes).

In conclusion, Defendants were properly joined under Rule 8 and have not met their burden illustrating they would suffer real prejudice if tried jointly. Accordingly, their motions to sever will be denied.

IT HEREBY IS RECOMMENDED to the Honorable Susan M. Bazis, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motions to dismiss, Filing Nos. 157 and 163, be denied.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

FURTHER, IT HEREBY IS ORDERED:

1. Defendants' motions for bill of particulars, Filing Nos. 155 and 166, are denied.

2. Defendants' motions to sever, Filing Nos. 151 and 168, are denied without prejudice to reassertion.

Dated this 2nd day of December, 2024.

BY THE COURT:

_s/ Jacqueline M. DeLuca_

United States Magistrate Judge